We'll hear argument next in Case 23-1345, Rivers v. Guerrero. Mr. Brulin. Mr. Chief Justice, and may it please the Court, Congress did not slam the door on exculpatory evidence that emerges while a prisoner's first habeas case is on appeal. Outside of habeas, there's always been a pathway to bring late-breaking claims to an appellate court's attention, and historically, habeas was no different. The near-uniform practice in the decades before AEDPA was to consider such claims on the merits, as part and parcel of a prisoner's first habeas case, without a word about successive litigation. Congress enacted AEDPA against that backdrop, and as Bannister tells us, it did not redefine what counts as successive. The other side's rule is unmoored from text and history, and it also comes at a cost. Viable constitutional claims that would have warranted habeas relief will fall through the cracks under their rule. That means every claim of sentencing error, every claim of structural error, and every Brady or Napu claim that doesn't show innocence by clear and convincing evidence. The reason those claims don't fly under 2244 is that Congress decided the state's interest in repose outweighs the interest in getting those claims right. But the other side has never explained why they're entitled to repose while they're still defending the conviction on appeal, and you're not going to hear an explanation this morning. The small universe of cases where our rule makes a difference is the universe of cases where both the district court and the court of appeals agree that a new claim deserves its day in court. Those cases will be rare, but when they arise, AEDPA does not strip district courts of the power to consider new evidence that would warrant habeas relief. The lower courts here made a threshold jurisdictional error and so never reached the merits or any procedural issues. This court should reverse and remand. I welcome your questions. How would you define second and successive? Well, I would define it, Justice Thomas, based on the history, because Bannister says you look at the history. But a post-AEDPA, how would you define it? Post-AEDPA, I would say that a second or successive petition is something that in 1996, when Congress used that phrase, ordinary members of the bar would have recognized as settled is second or successive. And then AEDPA says we look at the purposes behind, I'm sorry, Bannister says we look at the purposes behind the statute, judicial economy, piecemeal litigation, hastening finality, and Bannister tells us that that's how you look at it. And this case, I think, is easier than Bannister or Gonzalez because the statute itself answers that. Here we have Congress specifically considering how amendments should work in habeas, and Congress says amendments in habeas work just like amendments in ordinary civil litigation. And Congress said that there's a small sliver of amendments that are subject to the second or successive rules, and only those. Don't we, Norm, in the mine run cases, consider second time to be second and successive? So, Justice Thomas, if I were just looking at the phrase, I would say yes. That's how I would look at second or successive. But this Court has said second or successive is a term of art. And so all I'm saying today is what this Court said in Bannister, which is that we look at the history and the purposes. And, again, I think this case is easier than Bannister because we have a statutory hook. And going to that statutory hook, 2242 gives us the general rule, and then 2266B3B gives us the only exception. Congress specifically thought about which amendments should be subject to the rules governing second or successive petitions, and it said in 2266B3B it's only this tiny sliver, filed by prisoners on death row, in opt-in states, after the state files its answer. And I think it would disregard Congress's drafting choices to apply the rules governing second or successive petitions outside that tiny sliver. And I think my friend, Mr. Garnieri, is with me on that. Page 17 of their brief, they say 2266B3B, that's the exception, and then other amendments follow the Federal rules. And if there's any question about that, I would turn to history. As I said, Justice Thomas, and here you have the near-uniform practice leading up to AEDPA, was that mid-appeal efforts to amend were not treated as successive. And I think my favorite case on that is the Harris-Iates case, because Texas needs the Court to say that the district court and the court of appeals, with Learned Hand on the panel, and all nine members of this court, plus I guess the solicitor general and the line prosecutor, all saw the effort to amend after the appeal was filed and didn't say a word about it, I guess forgot that it was second or successive. And this is not a case where that issue is just lurking in the record. If you look at the prisoner's blue brief, he says on page 10 to 11, I filed my notice of appeal, and then I moved to amend, and then he argues the core of the amendment issue in his merits brief. And he had a judgment. I guess what I'm trying to understand, so first of all, is your primary argument that after judgment against him on the habeas claim that existed, he appeals it, and during the pendency of an appeal, if he seeks to amend the existing habeas claim, you say what? Because the appeal is still pending, he can do it? Not necessarily, Justice Jackson. Because the appeal is still pending, it's not second or successive. It might be a bad amendment. It might die for Rule 15 reasons. It might be too — How do you square that with Gonzales and the idea that the judgment is doing some work here? So, Justice Jackson, Gonzales did not face the question presented here because there was no pending appeal in Gonzales. The — Aurelio Gonzales comes in a year after abandoning his appeal when all of us up here agree that a habeas claim in that posture would be second or successive. And so in Gonzales, anything that comes in would be second or successive. And that's why the Court is saying, well, you can't come in and circumvent the statute. And — But why wouldn't you be circumventing the statute here by just, you know, interpreting anything that comes in during an appeal as not being second or successive? I mean, we have a statute in which Congress was very clear about limiting the number of filings, or at least applying pretty restrictive rules to the ability to file another application. And so I guess what I — it boils down to, for me at least, is trying to understand the work of the judgment in providing the dividing line as to whether things filed after that, assuming the judgment remains in effect, why aren't they second or successive, and wouldn't you be undermining AEDPA to say otherwise? So two responses, Justice Jackson. First, if you assume that what Rivers filed was second or successive and we're just trying to circumvent the statute, then I lose. But that's not how Bannister looked at it. Bannister said, we have a statutory phrase, second or successive habeas corpus application. That meant something in 1996 when Congress enacted the statute. And the way we figure out what it meant is we look at pre-AEDPA history and practice and doctrine and AEDPA's purposes. So going squarely to your question, my point is that leading up to AEDPA, a filing that came in during the appeal might have lost on the merits. Bannister says, well, that doesn't count for the analysis. I understand. But aren't you reading a lot into Bannister? I mean, wasn't that in a 59E scenario? It was in a 59E scenario, Justice Kagan. And didn't that have something to do with the analysis? I mean, the point there was that the judgment was suspended such that, you know, it's a very limited amount of time and it wasn't really the appeal or lack of an appeal or whatnot that seemed to be doing the work. It was about the nature of the judgment under a 59E scenario. So, Justice Jackson, I agree that Bannister was focused on that question. And Bannister wasn't focused on the question before you today, the question of, well, what do we do when new evidence arises on the appeal? My point is, is that Bannister gives us the logic that we're supposed to use in analyzing, well, how do we treat a claim or a filing that's not a 59E? And what I would say is, Bannister says, look to the history, look to the purposes. And here I think we have history in droves. We give you the Heracides case, the Strand case out of the Tenth Circuit, all of these other cases where prisoners leading up to AEDPA lob in motions to the court. The SG says that the considered trend in the years shortly before the enactment of AEDPA in 1996 was to treat efforts to amend a habeas application mid-appeal as second or successive applications. So they say by the time we got to 1996, what you're talking about really wasn't the case. Do you want to address that? Two points, Justice Kavanaugh. First, I disagree with them on the history. I don't think that was the considered trend. But just to take a step back, you could say the same thing about Bannister. If you look at Bannister, the opinion cites one case from 1965, one case from 1988 where 59E motions were not deemed successive, and then Texas comes in on the other side with a case from 1993. But that didn't turn the tide in Bannister because for purposes of the historical analysis, I think the best place to look is page 325 of the Scalia-Garner Treatise. And what they say is when you're trying to figure out what sort of history Congress would have picked up, you look at, well, would a member of the bar view this as settled? And they say if it's just a couple of opinions going one way or the other way, well, that's not the kind of history that Congress would have picked up. And going back to Bannister, I think the history here is even stronger, at least as strong as it was in Bannister. Petitioners there come in with cases out of five circuits where courts didn't treat 59E motions as second or successive. We give you cases out of six circuits. Then on the other side of the ledger, it's déjà vu, Justice Kavanaugh. Texas Sentence of Meeke come in in Bannister. They have one case out of the Eighth Circuit where the court says 59E, second or successive. And here they found one case out of the Eighth Circuit applying the very same logic that this Court wrote off as a historical outlier in Bannister. So I think the history is at least as clear here as it was in Bannister. If we're going to look at history, and habeas being civil litigation, you know, the default rule is that when the district court relieves itself of the case after 59 and it goes to the Court of Appeals, you don't just get to Rule 15, file an amendment willy-nilly. The case is in the Court of Appeals. That's, you know, baseline historical practice is relevant. What about that? I mean, you're asking for us to treat habeas differently than any other form of civil litigation. So I sure hope not, Justice Gorsuch. The point that I'm trying to make is that — No, explain to me why not, because I've never heard of being able to amend my complaint when I'm on appeal in a 12B6, after a 12B6 dismissal. Boy, I would have liked to have done that a couple of times. Justice Gorsuch, I think you're absolutely right, and I want to take a step back because I think it's important to be precise about the doctrine. So I'm not saying that you get to amend your 12B6 complaint while you're up on  My point is, historically, appellate courts were open to new evidence or new claims that come in. I think the best case there is the Shotwell case. That's a case where the Solicitor General comes into this court at the cert stage, they lost in the Court of Appeals, and the Solicitor General says, look, I've got two new affidavits that I think show that the respondent pulled a fast one on the lower court. So please, Supreme Court, would you kick it back down? And the court says, look, we are a court of review, not first review, so we're not going to take a crack at the merits. But they say two things. They say, first, we believe the Solicitor General. This is new. Yeah, I accept that we have that power, especially when the government is submitting an error, right, or some other important new considerations. But as a general rule, in civil practice, if I come in and say, boy, I got a great amendment, and I'm in front of a panel, they roll their eyes and they say, nice, that's a nice thing you have there. I should have done that earlier, friend. You know, go file a 60B. That's what they say. Well, Justice Gorsuch, I think you're right. If you come in to the court of appeals or even the district court, you're probably going to get laughed out of court most of the time. But my point is a different one. My point is about the power that courts have. And what I would say is, for a long time, appellate courts have been open to claims, and denied most of them, but been open to claims. And so I hope I'm not asking for anything in habeas that we wouldn't have in ordinary civil litigation. My point is, when you file that in habeas, it's not second or successive. It's probably dead for other reasons, but it's not second or successive. Sorry, I'm not sure I follow your argument. If it's normal civil litigation and not habeas, if you file a motion to amend between a final judgment in the district court and an appeal, the district court has no inherent power to open to grant that motion, correct? Correct. All it could do is a 62-1, make a suggestion to the court of appeals, correct? Yes. Here, you didn't ask them to make a suggestion. So not having asked them to do it, why do you think the motion is still alive after the court of appeals affirmed the judgment below? Well, two responses, Justice Sotomayor. How could the district court reopen absent 6dB? That's my point. You could reopen under 6dB to consider your motion, correct?  Right? But none of that happened. You didn't ask them to indicate under 62-1, and the court of appeals didn't vacate or remand the matter to the district court to make the motion to amend still live, right? So I agree with you on the second half, Justice Sotomayor. I disagree about what the record shows on the first half. If you look at Joint Appendix 107, Rivers is asking, he says, look, please, district court, would you consider an interlocutory review? Now, in the ---- It can't do a review. That's the point. It may have been a product of him being pro se, and if he had hired you then, you probably would have made a motion. So, Justice Sotomayor, my ---- The proper motion. But he didn't. Well, my point is twofold. First, I think he did ask for an interlocutory review. I will grant he ---- There is no interlocutory relief, meaning you admitted that the district court does not have the power to adjudicate the motion to amend. The most it could do is what 62-1 permits, which is an indication to the court of appeals. Yes. And my ---- And that's not an interlocutory appeal. So I take what he was asking for, the only plausible way to construe what he was asking for is as an indicative ruling. Now, the district court took up his motion to amend, and it didn't reach the merits. It said, look, I don't have the jurisdiction to open the front cover because this is a second or successive petition.  So we're asking you to hold that that was a mistake under AEDPA, and you asked about the relief on ---- But he presented the same thing to the court of appeals, basically the same motion. And the court of appeals did not grant a vacating remand. Well, that's ---- It wasn't convinced by whatever he presented. It may have made an error, but that wasn't appealed either. So, Justice Sotomayor, I don't think the court of appeals saying we're not going to enlarge the record shows us what it would do in response to an interlocutory or, I'm sorry, indicative ---- It could have done what we did in the case you cite. Well, that's ---- If the motion on tort had happened, it could have vacated and remanded. Well, Justice Sotomayor, I think there's a meaningful difference between a prisoner mailing in some typewritten pages and one of the court of appeals colleagues picking up the phone and saying, look ---- In civil litigation, absent a vacate and remand by the court of appeals, would the motion have to be considered under 60B? If there's no indicative ruling and if there's no vacate or remand, then the only way to reopen the judgment would be 60B unless the court of appeals reverses or vacates otherwise.  Thank you. Counsel, can I have you address the threshold arguments that are being made about standing and the relief? Yes. So, first, as to standing, this Court has ---- or, I'm sorry, as to standing, we have appellate standing because an order from this Court reversing the Fifth Circuit would lead to the potential for redress. And what we would say there is we would go back to the district court and we would file a 60B-6 motion to bring back the order ---- I'm sorry, bring back the initial habeas petition. And for purposes of standing and mootness, the probability of success is not on the  So it's just a question about the district court's power. And there the argument would be it's an integrity-based argument under footnote 4 of Gonzales. We would be saying, in this position, the Supreme Court has just decided that we were right about the AEDPA question. So district court, respectfully, would you please reopen the judgment denying the initial appeal or initial petition? Then the motion to amend would still be pending. And you're saying we don't have to care about whether or not that is going to be successful. Yes, that's right. You just have the opportunity to do it. That's right. It's a question about the district court's power. Texas is coming in and saying, well, look, there's nothing that you could do on  And we've identified a procedure that would let the district court grant Rivers redress. What about the habeas jurisdiction and the fact that he's in custody on one charge versus the other? Yes. We're challenging the convictions for which he's still in custody. I don't take the other side to be arguing that the new exculpatory evidence doesn't undermine those convictions. They certainly didn't argue that in the brief in opposition or below. I take them to be challenging us on the merits, but I don't take them to be saying as a matter of habeas jurisdiction that there's – that the evidence wouldn't go as a jurisdictional matter. Thank you. Now, my friends on the other side I think are going to stand up and say a word about the floodgates. And so I do want to address that. And the reason that our approach doesn't open the floodgates is that it comes with a structural barrier and an absolute jurisdictional backstop. And that's borne out by what we've seen in the Second Circuit over the last two decades. So I'll start with the structural piece. For any of this to get off the ground, the habeas petitioner has to go to the district court, convince the district court to issue an indicative ruling on a case, and then the absolute jurisdictional backstop is the court of appeals has to agree to remand the case for further proceedings. And at both steps of those analysis, the prisoner has the burden of showing that amendment here would not be futile, that it's timely. That kicks out a lot of cases because it has a one-year statute of limitations. The prisoner is also going to have to show that it's not going to be a dead case on the merits. Then you go up to the court of appeals. And we've cited cases, the Louisiana against Becerra case, where the western district of Louisiana sent up a flare to the Fifth Circuit, and the Fifth Circuit said, no, we don't think this amendment should go forward. It's not timely. You should have brought it earlier. So the court of appeals is doing another review. And all of this is borne out by what we've seen in the Second Circuit over the last 20 years, because the Second Circuit has read AEDPA our way. They've said 2244 doesn't kick in until the end of the appeal. And I will tell you, I've read more of these cases than I care to remember. There's about one or two per year over the last 20 years. And what you see time and time again is prisoners come in and they say, look, I just got some new evidence or something changed and I want to fight it out. And in one or two or three-page opinions, a magistrate judge or the district court judge has no trouble addressing those claims. And just to take a step back, at bottom, I think this case is really a venue case like the EPA cases you had last week, because these claims are coming in one way or the other. The question is just who's the front-line decision-maker going to be? I can tell you, when a prisoner gets new evidence or thinks the prisoner has a new claim while the appeal is pending, he's going to send something in to some court. And then some decision-maker is going to have to decide, well, what do I do with it? Mr. Brulin, is the argument that you're making today and the primary argument that you make in your brief the same argument that you made in your petition? Justice Alito, it's the same claim. We say at the — Is it the same argument? The 2242 argument is new at the merit stage, yes. And this Court has been very clear that I can come in and make arguments at the merit stage in support of the same claim raised in the petition. I don't take my friends — Is there a conflict in the circuits on this new argument that you're making today? Well, there's a conflict in the circuits because a bunch of circuits reject the idea that an amendment is not a second or successive petition. That's what the Fifth Circuit said below. Rivers said all along, I've filed an amendment. That means it's okay under Rule 15, and therefore it's not second or successive. The Fifth Circuit said not so fast. We think 2244 applies right after final judgment. They didn't cite Bannister. And so that is the same argument that Rivers has been making. And the Fifth Circuit rejected the argument that it's an amendment, therefore it should be okay. Now, I do want to go to the point that — Well, we've had a mini-epidemic of cert petitions that have convinced us to take a case because there's supposedly a conflict on a certain issue. And then once cert is granted, the argument that is advanced by the petitioners, quite a bit different from what we were sold at the petition stage. Is this another outbreak of the same disease? I don't think so, Justice Alito. And I think the best evidence there is the United States is never shy about pointing out when a petitioner strays from the QP or the petition. And I don't hear my friends from the United States to be making that argument. But even if you're worried about the amendment theory, I would say the timing argument, even Texas agrees that that is squarely within the question presented, and that is an issue over which the lower courts have certainly disagreed. Thank you. And what I would say there on the timing question, we also have context and history on our side there. And again, to go back to your question, Justice Gorsuch, this is not a case where I'm coming in and asking for special favors for habeas petitioners. All I'm saying is it might be a bad amendment. The lower courts might take five minutes, look at it, and say this is going nowhere. All I'm asking you to say is whatever it is, it's not second or successive. And one reason to think that it's not second or successive is, as your opinion, your separate opinion in Edwards v. Vannoy pointed out, we have this longstanding principle in habeas that finality means this court says go away or affirms on the merits or the opportunity to seek cert runs out. So, again, I'm not saying let's create a special loophole or porthole or anything for habeas prisoners to come in. All I'm saying is whatever the words second or successive habeas application meant in 1996, they don't refer to this sort of filing because historically those kinds of filings were not deemed abuses of the writ. And so if you agree with us on the edbit question, I will grant. Texas will have a lot of civil procedure arguments below. I'm sure they'll have a lot of merits arguments below. All we're asking you to decide is this narrow question. May I finish, Mr. Chair? All I'm asking you to decide is this narrow question of what counted as second or successive habeas corpus application in 1996, and it wasn't this. Thank you, Counsel. Justice Thomas? Justice Alito? Justice Sotomayor? You did point out to us in your petition a circuit split. I'm not sure the Third Circuit rule is consistent with what you claim it is. It's more consistent with what we were speaking about earlier. The Third Circuit rule says when a district court gets a motion to amend, it should exercise its discretion to hold the appeal pending the court of appeals decision. And it can only consider it or grant it if the court of appeal vacates and remands. So that's always the case, correct? That's right, Justice Sotomayor. So the Third Circuit, I don't think, is inconsistent with anything. The Second Circuit does have some very charitably loose language that a motion to amend is never second or successive. But I, like you, had my law clerk look at what the Second Circuit was doing, and I got a bunch of cases where the district court didn't wait for the court of appeals to rule, but instead said the motion to amend was an abuse of the writ. So I don't know, and they dismissed, and the circuit didn't do anything. So I'm not sure the rule is as absolute as you say. They're basically following and saying hold it until the circuit acts, and if we vacate and remand, then you can consider it. I think that's right, Justice Sotomayor. Here's how I understand it under Federal Rule Civil Procedure 62.1. It says the district court can always consider something that comes in, and the district court has three options. It can deny it outright. I think that's most of the cases that you and I were discussing. It can also defer ruling. I think that's one of the things that the Third Circuit was focused on. I think your opinion in the Ching case has the footnote that says the same thing. Or, and this is the other alternative we were talking about, it can send up a flare to the court of appeals and say this raises a substantial issue. So my, what I'm suggesting here is the Second Circuit. Sotomayor, you're suggesting sort of a, what should I call it, procedural thing. Don't call it second or successive and refer it to the court of appeals, but instead deny it now. Justice Sotomayor, I want to be very clear about the doctrine because there are two separate questions. There is the question of is it second or successive, as Congress used that phrase in 1996, and then there is an analytically distinct question of what should you do with it procedurally. My, the only question I'm asking you to answer is what is the meaning of second or successive habeas corpus application in 1996, and then we've also tried to give you some comfort about the procedural pathway. And so, yes, that is one of the things that a district court can do. And, in fact, that's what most of the courts in the Second Circuit that we've seen have done, is just take one look, deny them outright. And the last thing I would add is the other side comes in and says, well, how is that square with your efficiency argument if the prisoner can just file something in the middle of the appeal and then file a second or successive petition? I didn't find a single case in the Second Circuit where that happened. Prisoners are taking no for an answer, and if they didn't, boy, if I were a court of appeals judge, I would be glad to have a short opinion explaining why this amendment goes nowhere. Roberts. Thank you.  Justice Kagan. Justice Gorsuch. Justice Jackson. Thank you, counsel. Mr. Nielsen. Mr. Chief Justice, and may it please the Court. River's new petition, filed years after an appealed final judgment, is second or successive under AEDPA for multiple reasons. I want to start with precedent. Under Gonzales and Bannister, Rule 59e motions aren't successive, while Rule 60b motions generally are because, quoting from Bannister, a Rule 59e motion is a one-time effort to bring alleged errors in a just issue decision to a habeas court's attention before taking a single appeal. River's theory, however, would allow him to repeatedly allege new claims having nothing to do with the final judgment issued years ago after he appealed. I think Bannister's logic is all but dispositive here. I would also like to respond to some of the things that I heard from my friend during his argument. He says that the time before AEDPA in 1996, there were six circuits on his side. I don't agree with that at all. I would urge the Court to look at the brief from Arkansas. Arkansas goes through the cases right before AEDPA's enactment. I would also urge the Court to look at page 16 and 17 of the reply brief. I think that's where he's getting that. You will notice he cites cases on his side, 4th, 5th, and 8th. And then he says, 4th, 5th, and 8th agree with us. The cases that agree with us were later in time. They were closer to 1996. He also says, you know, we talked about this was a pro se, which I understand and I'm sympathetic to. But Sidley was brought in not, you know, just for the cert stage. They filed the motion to stay the Fifth Circuit's judgment pending certiorari. None of their new argument is in that either. This isn't an example of a pro se person not knowing what to do. This was Sidley Austin not raising the argument. As to standing, the Court has jurisdiction to address the split that it thought it was hearing. That is a question about res judicata from the first judgment. Does it bar the second case? What the Court doesn't have jurisdiction to do is to open a case that is not in front of it. That case was closed. The first petition was dismissed in a final judgment in 2018. The Fifth Circuit affirmed in 2022. This Court denied cert in 2023. That case is done. I don't know how the Court could reopen that case. As to habeas jurisdiction, again, he's not in custody for what he's talking about. I don't know how he could have, how this Court could have habeas jurisdiction there. As to the Second Circuit rule, look, you definitely have the opportunity to have multiple appeals under that rule because you could have the first one and then you amend, you get another final judgment, you have a second one. This Court said in Bannister you can't do that. And as to the new argument, there is no split, Justice Alito. In fact, on our side, United States v. Arrington, 2014 from the D.C. Circuit, Judge Sirivasan, joined by Judges Garland and Millett, said you can't use 2106 to get around AEDPA in that way. I welcome the Court's questions. How would you define second or successive? I think there, some think that the appeal has to be final. And I think most would just simply say the judgment of district court. What's your view? I think the Court answered it in Bannister. I think if you have the first application and then you have another application after the final judgment, sometimes that's suspended by Rule 59E. If you're doing it again the second time, that is second and successive. I think that's how we take the Court's decision in Bannister. I think that answers the question respectfully, Your Honor. What if the judgment is vacated? I'm trying to understand the scenario, even if we agree with you that the judgment is the line and the person appeals, goes up to the Fifth Circuit or whatever circuit, and they agree and vacate the judgment and send it back. Any filings that had been submitted by the prisoner in that interim, could they be considered by the district court on remand? No, we don't think so, Your Honor. But I want to make sure that we understand, if that is this Court's rule, Texas still prevails because there wasn't a remand after the Fifth Circuit. No, I understand. That's not this case. But I guess I'm a little worried about a world in which if we are pegging this to the judgment, the judgment is subsequently vacated and there's new evidence now in the record and the district court is being called upon by the vacater and the remand to review it. I don't understand why, totally not this case, but I don't understand why at that point now the new evidence doesn't get considered as an amendment of the initial habeas filing. So the way this works in ordinary civil litigation, and then I'll do it and add the gloss on it, in ordinary litigation, if there is a remand from the Court of Appeals... Accompanying a vacater of the judgment. With a vacater of the judgment, you still are going to be limited by the scope of the remand. It's not like if there's a remand, now everything is up for grabs. It's still your limited, and again, if the Court needs to look at cases on this, Wright and Miller, Section 1488, I think it's footnote 11, is the one that discusses this line of cases, the scope of the mandate rule. So, you know, for instance, you have a case about a contract claim and... So could the Court of Appeals indicate, having, you know, been alerted to the fact that there's this new evidence out there? I mean, I guess I don't understand a world in which new evidence surfaces that everyone agrees could not have been found before, and here it is, and it's relevant to the issue of habeas. I appreciate your argument that after we have a judgment, you know, as long as the judgment stands, consideration of that would be a second or successive kind of scenario under AEDPA. But if there is no judgment because it goes up to the Court of Appeals and the judgment is vacated, it's unclear to me why the new evidence that is relevant to the initial habeas petition couldn't be looked at by a district court reviewing that habeas petition. If the Court of Appeals says you can, then you can? Again, it would be as long as it's within the scope of the mandate. Of the mandate. Which it often would be. Again, it would depend on the facts of the case. But the AEDPA gloss on all of this is under AEDPA, you have the COA requirement. Yes. So the scope of the appeals are inherently going to be limited. So the scope of the mandate is going to be narrower than an ordinary case. So imagine you have a case where somebody says I have a Brady claim and a Strickland claim and the district court says you lose on both. The Court of Appeals grants a COA as to the Brady issue and then reverses. Back in front of the district court, you can't say, well, I'm going to bring a different Strickland claim and an APU claim because that's not within the scope. I see. On the Second Circuit experience, I think your initial response is precedent and text. But take it on its own. It's workability. Do you have a concern about how workable it's been in the Second Circuit? It seems like it's worked fine. We don't think it's worked fine. The case that we cite was the Anderson case out of Connecticut where it seemed like a pretty straightforward issue. The poor judge has to go through three separate lines of analysis to try to figure out what to do with this thing. And that's, I think, a pretty straightforward case. But I also recognize that by definition, you're going to have multiple appeals possible out of a single case. So you have the very first one that is up on appeal. While that's happening, all the way up to this court, up in certiorari petition, they file a second one. They can keep litigating that. Well, that means you're going to get two appeals out of a single, what they claim is a single application. That doesn't make any sense. And I think it's important to recognize that 2244B doesn't mean you lose. 2244B means you have to go to the court of appeals. And we're talking about mid-appeal cases. So that means, you know, unless it's like day 29, so we're not just past rule 59E, 59B, 59E rather, we're talking about a case where you already have a court of appeals panel who's already looking at this thing. It seems to me a lot more efficient for that panel to be able to opportunity to look at the new material rather than sending it back to a district court or magistrate judge three years ago, you know, 1,500 cases later. They're not going to possibly remember what that case was about, whereas you have a panel looking at it right now. If we conclude the pre-'96 case law is just a mixed bag. It doesn't cut either way. Well, I mean, I think the Court already answered the history in both Gonzales and Bannister. On this issue. Sure. But, again, I think the Court has already answered the history in Gonzales and Bannister because in every circuit court, if you file a motion to amend a case that has been closed for years, it's either one of two things. It's either a nullity, it does not exist, or it will be construed as a Rule 60B motion. That is the rule in Morris Federal practice. We cite other cases. We'll have a whole string cite of these cases. Well, we know from Gonzales and Bannister that if it's a Rule 60B, well, then it's already second and successive. So I don't think the history works for them. They do have a couple of cases where they say, well, that looks like amendment, but they didn't grant relief in any of those cases. We're reading a lot into silence, especially because we have cases like Judge Arnold's decision from the Eighth Circuit. You know, he knows a little bit about civil procedure, and he says, no, you can't do this. I think that would be the relevant history. So you have all the cases that say 60B, mid-appeal, that counts as second or successive, and you have someone trying to get around that with Rule 15, and they say, well, that's second and successive, too. That's the history leading up right to 1996. If there are no further questions. Just one on habeas jurisdiction. Why don't we have it? I understand he may have completed one sentence, but he's serving concurrent sentences for other things. He claims his amendment will help him with those. Yeah. A couple of answers. One. One will do. Okay. Well, the easier answer is. The better answer, hopefully. All right. I'm going to give you the easier answer to write in an opinion, is that was the subject of the first habeas proceeding. The State Post-Conviction Court said there's three lawyers that said you did this. You say you didn't say that. They did. That's a finding of fact. Then he goes to the Federal Post-Conviction Court about that, and that's about the sexual abuse charges. And he has to show that that is wrong. And he has no evidence. And the district court says no habeas. The Fifth Circuit affirms. And this Court denies certiorari. That issue is closed. Anything further? Thank you, counsel. Mr. Garnieri. Mr. Chief Justice, and may it please the Court. Petitioner litigated his first Section 2254 application to a final judgment and was granted a certificate of appealability. Two and a half years later, while his appeal was still pending, he went back to the district court and filed what he came to characterize as a motion to amend his first application. Neither the rules of civil procedure nor the statutes applicable to habeas proceedings permit granting such a post-judgment request to amend. As a matter of black-letter civil procedure law, a party may not amend its pleadings after the entry of judgment without first obtaining relief from the judgment. And in habeas proceedings, when a prisoner requests relief from the judgment mid-appeal to add new claims or to replete old claims on the basis of allegedly new evidence, Section 2244B applies. Petitioner's request to inject new claims or new evidence into these proceedings cannot go forward unless he can satisfy AEDPA's stringent gatekeeping requirements. I welcome the Court's questions. Is there any way in which your argument for the United States differs from that of Respondent? I don't think so, Mr. Chief Justice. Texas has taken a position on a number of subsidiary issues with respect to the operation of Federal Rule of Civil Procedure 62.1. The United States has not taken a position on those issues, but with respect to the main points at issue in this case, I think the United States and Texas are fully aligned. I was just going to say, Petitioner points out that the government doesn't complain about the new argument injected in the brief, and you didn't say anything in your brief. Do you want to say anything now? I could share the Court's frustration. I mean, I don't want to presuppose how the Court has reacted to the merits arguments in this case, but if there is a sense of frustration that Petitioner's arguments have evolved substantially from the certiorari stage to the merits stage, I could entirely understand that frustration. We have not urged the Court to dispose of the case on those grounds, principally because the United States does not have any particular Federal interest in whether Petitioner preserved specific arguments in this case. We are participating here so that the Court – because we think it's important to get the underlying legal rules correct. And on those points, again, I think we are in lockstep agreement with Texas on all the points that matter. Well, speaking of those rules, do you want to articulate exactly what rule statements you would be looking for and how you think it might affect 2255? Sure. I think the key – and this comes directly from the opinion of the Fifth Circuit in this case. The key point is that the limitations in section 2244B on the filing of second or successive applications come into play when a district court has entered a judgment on a first application on the merits. It is the entry of judgment that marks the terminal point in the proceedings after which the gatekeeping procedures in AEDPA apply. And it doesn't – I think if you agree with us on that, then it doesn't really matter whether the Petitioner comes into court and characterizes the relief that he or she is requesting as a form of post-judgment amendment or as a motion for relief from the judgment under 60B or perhaps as a request to the court of appeals itself to vacate and remand under 28 U.S.C. 2106 for the purpose of granting an amendment. All of those things, those are just the procedural vehicles for requesting relief from the judgment in order to add new claims or to replete old claims with new evidence. Those are two of the things that this Court identified in Gonzales as the kinds of arguments made after judgment that are properly treated as second or successive applications under Section 2244B. Sotomayor, you're not disagreeing with your colleague that – or are you – that if the court of appeals vacates and remand and vacates the judgment, is it then second and successive? No. I think – I think the point that my colleague was making was that the constraint there is going to be the scope of the remand from the court of appeals. But if you set that constraint aside, if the court of appeals has vacated the judgment on a first application for some reason other than just clearing the way for amendment and the case goes back to the district court, then we do think that in that case the State prisoner is in the same posture as pre-judgment before the case went up on appeal and they can seek to amend as permitted under Rule 15. Now, that's not this case. It's the First Circuit properly affirmed in the Petitioner's initial appeal. And in the second appeal, I think the Fifth Circuit correctly recognized that Section 2244B requires treating the – the filing the Petitioner made in this case as an application to file a second or successive application and was properly transferred to the Fifth Circuit for ADPA gatekeeping. Given that this is not this case, do you think we need to ask or answer Justice Sotomayor's question in the opinion about the vacate and remand scenario? No. There's no occasion to do that here, but I do think that that is how in general the situation would properly be governed on a remand. Now, again, I want to emphasize that it presupposes that the court of appeals is remanding for some reason other than just to clear the way for amendment. I mean, that is the kind of vacateur that my friend is requesting here. On his view of how this works, if you discover – claim to discover some new evidence in the course of your appeal from a final judgment on your first application, the State prisoner could go to the court of appeals and request a vacateur and remand for no purpose other than avoiding the limitations that would otherwise apply to a Rule 60B motion filed in the district court itself, which, again, under Gonzalo's would have to be treated as a second or successive application. We don't think that kind of remand is – is permissible as a matter both under the Section 2106 and just under AEDPA gatekeeping. But if you are in a situation in which the court of appeals vacates and remand for some other reason, the district court made a mistake in its entry of the first judgment and the case goes back down, then, yes, I do think there could be an opportunity for amendment in those circumstances. Roberts. Thank you, counsel. Thank you, Mr. Chief Justice. Rule in rebuttal. Thank you. Justice – Sotomayor, Justice Barrett, I want to resist the idea that that's not this case. Our whole point, the only question we're asking you to decide is did the district court make a threshold jurisdictional error about the meaning of AEDPA? I think it did for the textual reasons, the historical reasons, the purpose of reasons. And if that's right, then I think the correct remedy would be to reverse and to send it back down. And what we would say then is we could have the debate about, well, maybe they would say harmless error because they don't like the procedures or they have merits arguments. But we would be asking you to correct the threshold jurisdictional error that they made about the meaning of 2244B. That was what cut everything off. Now, I don't think there's any daylight between what I'm asking you to do and what the Third Circuit and even the Second Circuit have said. It all goes to what Mr. Guarnieri just said about, well, for some other reason. And I don't understand where that's coming from, because 2106 doesn't say for some other reason. And I don't see there being any sort of penumbral emanations from Rule 60B that curtail the appellate court's power to vacate. So then the question becomes, well, where are we getting this? You can't ask the district court to send up a flare so that the court of appeals can vacate just because you want to amend. It seems like what they're asking you to do is put an atextual gloss on 2106 such that if you're asking for a certain form of relief, then that doesn't fly. I'm not sure where that comes from, but it certainly doesn't come from AEDPA. And this Court could reverse just saying the meaning of 2244B is not what the lower court said, and you could save all of the stuff about the procedures and 2106 for another day. We're just asking you to reverse on the threshold AEDPA ground, which is analytically distinct from the procedural pathway. Justice Alito, I want to take just one more crack at addressing your concerns about the QP. What I would say is the amendment argument is a narrower ground that answers directly to the QP. We famed it broadly. We said, does 2244 apply to all, some, or no mid-appeal habeas filings? The amendment argument says, well, it sure doesn't apply to all, because textually, historically, and looking at AEDPA's purposes, an amendment is not a second or successive petition. I could understand the other side's argument if I were coming up here asking you to accept something broader, but usually as an advocate, it's a good thing to be standing up here offering a narrow ground for relief with a statutory hook. Justice Kavanaugh, I want to say a few words to you about workability, because I think that is the key or a key point in this case. It really does come down to what is the proper venue, because a prisoner who gets new evidence is going to race to court no matter what decision this court reaches today, and then some district court or some court of appeals is going to have to decide what to do. But please, don't take my word for it. Don't take General Nielsen's word for it. I urge you to look at the judges' amicus brief, because you have 17 of your former Article III colleagues with nearly 300 years of experience collectively as appellate judges and district court judges and magistrate judges, and what they're in here telling you is the other side's rule is burdensome for the judicial system as a whole. That's because the court of appeals is going to have to open a brand-new original proceeding every time one of these claims comes through the door, and remember, these claims are coming whatever this court says. So I think it's a whole lot more efficient looking at AEDPA's purposes to channel these things through the district court, the single decision-maker most familiar with the case, which, as Bannister said and Magwood said, the district court can take a five-minute glance at this and say, no, it loses on the merits, so no need to bother the court of appeals. These claims are coming, and the most workable solution is to say they get channeled through the district court while the appeal is pending. I will be the first to grant Congress inverted the normal presumption that appellate courts are courts of review, not first view, once the first case is over. But while the first case is still pending, 2244 does not apply, and it does not flip that presumption. I think the judges well explain why there's no evidence that's what Congress intended. Again, the last thing I'll say, and then I'll sit down early, we are just asking you to reverse the lower court's threshold error about the meaning of 2244, and then we can fight out whether Danny Rivers has merits issues or procedural issues. Bottom line, Danny Rivers might have 99 problems. It's just 2244 isn't one of them. We would ask you to reverse. Thank you. Thank you, counsel. The case is submitted.